# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-07-00593-CV

**Texas State University–San Marcos, Appellant**

**v.**

**Sam and Betty Bonnin, Individually, and as Independent,
Co-Administrators of the Estate of Jason Lee Bonnin, Appellees**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. 05-1738, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sam and Betty Bonnin brought a wrongful death and survival action against appellant Texas State University–San Marcos (TSU) in connection with the death of their son, Jason Bonnin.[1] TSU filed a plea to the jurisdiction, which the trial court denied. In this interlocutory appeal, TSU argues that the trial court erred in denying its plea to the jurisdiction because the Bonnins had not established a waiver of sovereign immunity. On original submission, we held that the Bonnins' pleadings did not establish jurisdiction, but that they were entitled to the opportunity to amend the pleadings because they did not affirmatively demonstrate incurable jurisdictional defects. TSU filed

---

[1] To avoid confusion, we will refer to the appellees collectively as "the Bonnins," and to Jason Bonnin individually as Jason.

a petition for discretionary review, and the supreme court vacated our opinion and remanded the case back to this Court for reconsideration in light of *City of Waco v. Kirwan*, 298 S.W.3d 618, 620 (Tex. 2009), a case decided after our original opinion was issued. In light of the clarification provided by *Kirwan*, we reverse the trial court's order denying the plea to the jurisdiction and render judgment dismissing all of the Bonnins' claims against TSU for lack of subject-matter jurisdiction.

## BACKGROUND

Jason Bonnin drowned on April 21, 2005, after jumping from the balcony of a restaurant where he worked into the waterway at Spring Lake Dam on the TSU campus. According to the Bonnins' pleadings, Jason's death resulted from a turbulent undertow that pulled him into underwater caverns located beneath the restaurant. The Bonnins brought claims for negligent use of real and personal property and the defective condition of real and personal property, alleging that TSU created an unreasonably dangerous condition by making repairs to the waterway where the incident occurred and failing to block access to the underwater caverns or warn others of their existence.[2] The Bonnins also brought the following claim:

> A condition of agricultural land or other property used for recreational purposes, which posed an unreasonable risk of harm. Specifically Defendant TSU allowed and/or created a defective condition on the subject real property when it knew, or should have known, the property would be used for recreational purposes. By allowing such condition, Defendant TSU proximately caused Plaintiffs' damages.

---

[2] The Bonnins also brought claims against several other defendants. Because TSU is the only defendant that sought dismissal by the plea to the jurisdiction involved in this appeal, our disposition of this appeal does not affect the Bonnins' claims against the other defendants.

TSU filed a plea to the jurisdiction, arguing that the Bonnins' claims were barred by sovereign immunity. The trial court denied the plea, and this interlocutory appeal followed.

**STANDARD OF REVIEW**

Because this is an appeal from a plea to the jurisdiction, "we will review the face of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the pleadings, if liberally construed, favored jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855 (Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). If the pleadings do not affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Id.* at 227.

**DISCUSSION**

*Texas Tort Claims Act*

In its first issue on appeal, TSU argues that the Bonnins have not sufficiently established a waiver of sovereign immunity under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2010). The State and its agencies are generally immune from suit, absent an express waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 224. Sovereign immunity is waived under the Texas Tort Claims Act for claims involving

3

personal injury or death if the plaintiff alleges the injury was caused by the condition or use of tangible personal property or real property. Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

An exception to the waiver of sovereign immunity under the Texas Tort Claims Act exists for a governmental unit's failure to perform an act or decision not to perform an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit. *Id.* § 101.056. TSU argues that because the Bonnins allege that the drowning occurred as the result of design decisions made by TSU in repairing the dam, the exception for discretionary acts applies and sovereign immunity is not waived. To the extent that the Bonnins' claims relate to the repairs made to the waterway by TSU, we agree.

The Texas Supreme Court has held that the exception for discretionary acts applies to the design of public works. *See State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) ("Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions."). "Likewise, decisions about installing safety features are discretionary decisions for which the State may not be sued." *State v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). While courts have held that the negligent maintenance of public works is not subject to the exception for discretionary acts, negligent maintenance is not at issue here. *See Brown v. Texas Dep't of Transp.*, 80 S.W.3d 594, 598 (Tex. App.—Corpus Christi 2000), *aff'd*, 80 S.W.3d 549 (Tex. 2002) (holding that failure to maintain street lamps was not discretionary act); *Texas Parks & Wildlife Dep't v. Davis*, 988 S.W.2d 370, 374 (Tex. App.—Austin 1999, no pet.) (holding that failure to remove deteriorated park bench was not discretionary act protected by Texas Tort Claims Act). Unlike the plaintiffs in *Brown* and *Davis*,

4

the Bonnins do not allege that TSU failed to maintain the waterway after the repairs were made, but attribute the injury to the initial design decisions regarding the repairs.[3] As a result, we hold that the Bonnins failed to establish a waiver of sovereign immunity for their claims of negligent use of real and personal property and defective condition of real and personal property, to the extent those claims relate to the waterway repairs. We further hold that because the pleadings regarding these particular claims rely on design decisions that are subject to the discretionary acts exception, the pleadings affirmatively negate the existence of jurisdiction and the Bonnins need not be allowed an opportunity to amend.

*Recreational Use Statute*

The Bonnins also raise an additional premises defect claim that is unrelated to the repairs of the waterway, alleging that "TSU *allowed* and/or created a defective condition on the subject real property when it knew, or should have known, the property would be used for recreational purposes." (Emphasis added.) In alleging that TSU allowed a defective condition on real property, the Bonnins bring a premises defect claim based on the turbulent undertow itself, rather than the design decisions related to the waterway repairs. Because this claim does not rely on

---

[3] The Bonnins' petition was accompanied by an affidavit from an engineering expert, stating:

> [I]t is my opinion that the hydraulic properties of the spillway have changed due to the repairs that were performed on the Spring Lake Dam Spillway in 2001. By raising the bottom of the spillway chute with 14 inches, a change in the hydraulic properties of the water discharging the spillway chute and entering the river has occurred. ... The 2001 repairs to the dam could have reduced or eliminated the dangerous condition had they been designed differently. For example, the original penstock caverns beneath Joe's Crab Shack should have been covered or closed off as part of this project.

5

a design decision by TSU, it is not subject to the discretionary acts exception to the Texas Tort Claims Act.  In order to determine whether sovereign immunity bars this claim, we must address TSU's second issue, in which it argues that its sovereign immunity has not been waived under the recreational use statute.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 75.001-.006 (West 2005 & Supp. 2010); *see also Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007) (noting that "because the recreational use statute modifies the Tort Claims Act's waiver of sovereign immunity, it is properly part of the government's plea to the jurisdiction").

The Texas Tort Claims Act incorporates the limitations of liability articulated in the recreational use statute into a governmental unit's waiver of immunity from suit.  Tex. Civ. Prac. & Rem. Code Ann. § 101.058 ("To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under this chapter, Chapter 75 controls."); *Miranda*, 133 S.W.3d at 225.  The recreational use statute states, in relevant part:

> If an owner, lessee, or occupant of real property . . . gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:
>
> (1) assure that the premises are safe for that purpose;
>
> (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or
>
> (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c).  Because the Bonnins, in bringing their premises defect claim, allege that TSU "knew, or should have known, the property would be used for

6

recreational purposes," we will assume without deciding that the recreational use statute applies to the present case.

The recreational use statute limits the landowner's duty for premises defects to that which is owed a trespasser—a duty not to injure that person willfully, wantonly, or through gross negligence. *See Miranda*, 133 S.W.3d at 225. "Therefore, a governmental unit waives sovereign immunity under the recreational use statute and the Texas Tort Claims Act only if it is grossly negligent." *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(d) (recreational use statute does not limit liability where owner "has been grossly negligent or has acted with malicious intent or in bad faith").

In *City of Waco v. Kirwan*, the Texas Supreme Court clarified the duty owed by landowners to recreational users under the recreational use statute, holding that a landowner does not generally owe a duty "to protect or warn against the dangers of natural conditions on the land." 298 S.W.3d at 627. As a result, the court held that the City of Waco's sovereign immunity was not waived in connection with a premises liability claim based solely on the collapse of a naturally occurring cliff. *Id.* at 620. The Bonnins' premises defect claim related to the turbulent undertow, like the claim in *Kirwan*, is based solely on an allegedly dangerous natural condition. *See id.* at 624 (discussing "a severe undertow" in context of dangerous natural conditions that would generally not create duty on part of landowner).

On original submission, we considered the Bonnins' claim based on the undertow to be similar to the claim at issue in *State v. Shumake*, 199 S.W.3d 279 (Tex. 2006). In *Shumake*, the plaintiffs brought a premises defect claim after their daughter drowned while swimming at a state

7

park, allegedly as a result of being sucked underwater by a powerful undertow and trapped in a man-made culvert. *Id.* at 281. The supreme court concluded that the plaintiffs' pleadings were sufficient to state a premises defect claim that not only fell within the Texas Tort Claims Act waiver of sovereign immunity, but also satisfied the heightened standard for liability imposed by the recreational use statute. *Id.* at 288.

In *Kirwan*, however, the supreme court drew a distinction between premises liability claims based solely on naturally occurring conditions and those based on artificial or man-made conditions, characterizing *Shumake* as the latter due to the allegedly dangerous condition of the man-made culverts. *Kirwan*, 298 S.W.3d at 622. Specifically, the court stated:

> We agree that, while *Shumake* may have provided some guidance, it did not directly answer the question presented here. The condition in *Shumake* was not a naturally occurring one. *See* [119 S.W.3d] at 281 (addressing liability for danger from man-made culvert). Here, however, the facts present a condition alleged to be both natural and not open and obvious.[4]

*Id.* The court in *Shumake* did not address the discretionary acts exception found in section 101.056 of the Texas Tort Claims Act in connection with the design of the man-made culverts, presumably because the issue was not raised by the parties. *See generally* 119 S.W.3d 279. In the present case, however, the issue of the discretionary acts exception has been raised and decided in favor of TSU on the Bonnins' claims based on the waterway repairs. As a result, this case differs from *Shumake*

---

[4] The court emphasized that the condition at issue was not open and obvious because it had previously stated in *Shumake* that landowners have no duty to warn recreational users against obvious defects or conditions. *See State v. Shumake*, 199 S.W.3d 279, 288 (Tex. 2006); *see also id.* ("But a landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use.").

in that the only claim remaining to be considered under the recreational use statute is one based solely on the turbulent undertow itself, a naturally occurring condition.[5] Given the supreme court's holding that landowners do not have a general duty to warn or protect recreational users against naturally occurring conditions, the Bonnins cannot plead a valid gross negligence claim under the recreational use statute. *See Kirwan*, 298 S.W.3d at 620.

In light of the foregoing, we hold that the Bonnins' premises defect claim based on the turbulent undertow, like their claims based on the design of the waterway, is barred by sovereign immunity. Furthermore, because the Bonnins' pleadings affirmatively negate the existence of jurisdiction, they need not be afforded the opportunity to amend.

In its third issue on appeal, TSU argues that the Bonnins failed to plead or prove a claim for negligent use of tangible personal property. This argument is based on the Bonnins' allegation that in making the repairs to the waterway, TSU was negligent in installing "various personal property in and around the waterway." TSU also asserts that the Bonnins may not proceed on a general negligence claim once a premises defect claim has been identified on the same facts. Given our conclusion that the Bonnins' claims related to the waterway repairs fall under the discretionary acts exception and are therefore barred by sovereign immunity, we need not address TSU's third issue on appeal.

---

[5] To the extent the Bonnins' complaint regarding the turbulent undertow can be characterized as a premises defect claim based on the existence of the underwater caverns, that complaint would be foreclosed by the discretionary acts exception. The Bonnins' own expert took the position that the nature of the underwater caverns was the direct result of a design decision by TSU, opining that the 2001 repairs to the waterway should have been "designed differently" by covering or closing off the caverns.

9

## CONCLUSION

We reverse the trial court's order denying TSU's plea to the jurisdiction and render judgment dismissing the Bonnins' claims against TSU for lack of subject-matter jurisdiction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson;
   Justice Waldrop not participating

Reversed and Rendered on Remand

Filed:  November 5, 2010